103 Cal.Rptr.2d 825 (2001)
86 Cal.App.4th 947
Terence SILO, Plaintiff and Respondent,
v.
CHW MEDICAL FOUNDATION et al., Defendants and Appellants.
Nos. C022895, C024033.
Court of Appeal, Third District.
January 31, 2001.
Review Granted May 16, 2001.
*828 Foley, Lardner, Weissburg & Aronson, Stephen W. Parrish and John H. Douglas, San Francisco, for Defendant and Appellant.
Matheny, Poidmore, Likert & Sears and Eric R. Wiesel, Sacramento, for Plaintiff and Respondent.
MORRISON, J.
Defendants CHW Medical Foundation, Mary King, and Ruth Ann Lewis appeal from a judgment and an award of attorney fees in plaintiff Terence Silo's action for religious discrimination in employment. In our previous opinion, filed November 25, 1997, we determined that CHW Medical Foundation (CHWMF), as a religiously affiliated nonprofit corporation, is an employer *829 under the California Fair Employment and Housing Act (FEHA) (Gov.Code, § 12900 et seq.). Further, we concluded that King and Lewis, as supervisors, are not liable for acts of discrimination. Finally, we found no abuse of discretion in failing to apply a fractional multiplier to the lodestar attorney fee request under FEHA. We declined to determine whether Silo was entitled to attorney fees under the private attorney general doctrine of Code of Civil Procedure section 1021.5.
The California Supreme Court granted review. On September 13, 2000, the California Supreme Court transferred the case to our court with directions to vacate our prior decision and to reconsider the cause in light of McKeon v. Mercy Healthcare Sacramento (1998) 19 Cal.4th 321, 79 Cal. Rptr.2d 319, 965 P.2d 1189 and Kelly v. Methodist Hospital of So. California (2000) 22 Cal.4th 1108, 95 Cal.Rptr.2d 514, 997 P.2d 1169 (Kelly). We vacated our prior decision.
On reconsideration, we find Silo's FEHA claim must fail because CHWMF was not then subject to FEHA. We further find, however, that the judgment against CHWMF is supported by Silo's alternate theory that his termination of employment violated the public policy of California as expressed in article I, section 8 of the California Constitution. The judgment against King and Lewis as supervisors is reversed. Further, the award of attorney fees was proper under Code of Civil Procedure section 1021.5.

FACTUAL AND PROCEDURAL
BACKGROUND
Silo was hired as a file clerk in the medical records department by CHWMF in July 1991. He was fired on April 30, 1993. Lewis was manager of the medical records department; King was manager of human resources. The termination letter recited that Silo had been counseled regarding his discussing religion and "attempting to `soul save' on clinic premises." He continued to "soul save" and three incidents were detailed. He was asked to stop, but continued "preaching." Employees complained of harassment. In addition, he was on probationary status for poor work performance. Due to his probationary status, his refusal to follow orders, and his continued religious solicitation, his employment was terminated.
Silo filed complaints of employment discrimination with the California Department of Fair Employment and Housing against CHWMF, King, and Lewis. The department issued a notice of case closure and informed Silo of his right to sue.
Silo then filed suit against CHWMF, King, and Lewis.[1] His complaint alleged he was a member of the Christian faith. On several occasions he engaged in discussions with coemployees on religious topics. He told several persons that Jesus loved them and asked a coemployee not to take the name of God in vain in his presence. Silo's actions were motivated by his sincere religious beliefs and practices. After being warned not to engage in such discussions on company time, Silo had to avoid such discussions; he alleged such treatment was different than that afforded to nonChristian employees. He engaged in a conversation with a coemployee about Christianity while on break. Thereafter he was fired, ostensibly for violating the rule prohibiting religious discussions during work time. Silo alleged he was discriminated against on the basis of his religion and that defendants failed to make reasonable accommodation for his sincerely held religious beliefs and practices.
Silo's complaint alleged six causes of action: employment discrimination in violation of public policy, employment discrimination in violation of Government *830 Code section 12940, subdivision (a), breach of contract, breach of the implied covenant of good faith and fair dealing, intentional infliction of emotional distress, and malicious prosecution based on CHWMF's appeal of Silo's unemployment benefits.
Defendants successfully demurred to the cause of action for intentional infliction of emotional distress.
CHWMF moved for summary adjudication on all causes of action except those based on contract. King and Lewis moved for summary judgment on the employment discrimination claim under FEHA, the only remaining cause of action in which they were named as defendants. Defendants sought summary judgment on the cause of action for unlawful employment discrimination on the basis that CHWMF, as a nonprofit religious corporation, was exempt from FEHA as a matter of law and therefore King and Lewis were not acting as agents of an entity subject to FEHA. They argued the first cause of action must fall because there was no clear public policy against a religious employer discriminating on the basis of religion.
Defendants argued that although CHWMF was incorporated as a nonprofit public benefit corporation rather than as a nonprofit religious corporation, it had sufficient religious affiliations to qualify as a religious corporation exempt from FEHA. CHWMF was formed to continue to incorporate the healing ministry of the Catholic Church into the practice of medicine. It was formed as the organizational component of Catholic Healthcare West (CHW), whose mission is to foster the healing ministry of the Roman Catholic Church and its sponsoring congregations (religious orders). CHW is the sole member of the corporation. At least one member of CHWMF's board of directors must be a member of the sponsoring congregations. Each officer must support the Catholic Standards of Ethical and Moral Conduct and must support the mission and philosophy of the Sisters of Mercy. All employees must comply with this mission and philosophy. As an organization sponsored by the Catholic Church, CHWMF must act in accordance with Canon Law and work with the resident bishops.
CHWMF's specific purpose is to establish, operate, and maintain multi-specialty medical clinics for the provision of patient care services, to conduct health education and medical research activities, and to conduct other appropriate activities in support of the religious and charitable activities of CHW and affiliated hospitals and health care providers. CHWMF must conduct its activities subject to the moral and ethical principles of the Roman Catholic Church and in conformity with the Ethical and Religious Directives for Catholic Health Facilities. These directives proscribe euthanasia, nontherapeutic sterilization, nontherapeutic abortions, and artificial insemination. CHWMF's emblem is a medical cross. It provides care to patients regardless of age, nationality, sex, or creed.
CHWMF is exempt from the California franchise tax as a charitable and educational institution. (Rev. & Tax.Code, § 23701d.) It is exempt from federal income tax as an educational, charitable and religious institution under section 501, subdivision (c)(3) of the Internal Revenue Code. It is listed in the Official Catholic Directory. Employees are entitled to participate in CHW's pension plan which is exempt from the requirements of the Employee Retirement Income Security Act as a church plan.
Defendants also argued that the Department of Fair Employment and Housing had repeatedly held that the FEHA religious exemption was available to nonprofit corporations such as CHWMF.
In opposition, Silo argued that only corporations incorporated as nonprofit religious corporations were exempt from FEHA. Although Silo did not dispute many of defendants' asserted undisputed facts, he did dispute the religious nature of CHWMF. He noted that defendants did *831 not restrict admissions to patients of the Catholic faith and had no hiring preference for Catholics. Further, there were no religious services at the clinic, and no display of Bibles, crucifixes, or other religious symbols.
The court denied the motions for summary adjudication or summary judgment as to the causes of action for employment discrimination. It granted the motion for summary adjudication for the cause of action for malicious prosecution.
Just before trial, defendants again urged there was no jurisdiction under FEHA for Silo's employment discrimination claim because of the religious nature of CHWMF. The court denied the motion. During trial the court denied defendants' motion for nonsuit as to the discrimination causes of action, but granted it as to the prayer for punitive damages.
By special verdict the jury found that defendants unlawfully discriminated against Silo based on his religious beliefs and practices in violation of FEHA and that they terminated his employment in violation of California's public policy. The jury found no breach of contract or of the implied covenant. The jury awarded Silo $6,305 in economic damages and $1 in noneconomic damages.
After trial Silo moved for attorney fees of $343,503.50, based on a lodestar of $171,751.50 with a multiplier of 2. He claimed fees as the prevailing party under Government Code section 12965, subdivision (b), under the private attorney general doctrine of Code of Civil Procedure section 1021.5, and pursuant to Code of Civil Procedure section 2033, subdivision (o), due to defendants' failure to make certain admissions.
At the hearing on the motion, the trial court found Silo was the prevailing party. Although more equivocal on the application of the private attorney general doctrine, stating that whether the case had conferred a benefit on a large class of persons was a "very close issue," the court found attorney fees were appropriate under Code of Civil Procedure section 1021.5. The court found no right to attorney fees under Code of Civil Procedure section 2033, subdivision (o).
The court reduced the lodestar amount to $155,180.75, deleting fees for certain unsuccessful claims, such as malicious prosecution, and rejected a multiplier. Including fees for the hearing, the court awarded attorney fees of $156,245.75.
Defendants argued for a reduction, raising the public policy concern that Silo would receive a much larger recovery, about $100,000, than the jury awarded. Under questioning, Silo's attorney revealed that the contingency fee agreement provided for a 60-40 split if the case went to trial, and this split included any amounts recovered as attorney fees.[2] The trial court refused to consider the fee agreement, stating that what attorneys decide to do with the award is up to them.

DISCUSSION

I. FEHA Claim
FEHA recognizes and declares that the opportunity to seek, obtain and hold employment without discrimination because of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, marital status, sex, or age is a civil right. (Gov.Code, § 12921.) It is an unlawful employment practice for an employer to discriminate in employment against any person because of, among other classifications, religious creed. (Gov.Code, § 12940, *832 subd. (a).) An employer is defined under FEHA as a person regularly employing five or more persons, but an employer does not include "a religious association or corporation not organized for private profit."[3] (Gov.Code, § 12926, subd. (d).)
Defendants contend the trial court erred in denying their motions for summary adjudication and summary judgment because CHWMF is exempt from FEHA. They contend the undisputed evidence established that CHWMF is "a religious ... corporation not organized for private profit." Silo contends only those corporations incorporated as nonprofit religious corporations under Corporations Code section 9110 are exempt from FEHA.
The California Supreme Court rejected Silo's argument in McKeon v. Mercy Healthcare Sacramento, supra, 19 Cal.4th 321, 79 Cal.Rptr.2d 319, 965 P.2d 1189. The court concluded, "nothing in the language or history of the religious-entity exemption appears to justify the conclusion that a religious entity, in order to claim exemption from FEHA, must incorporate as a nonprofit religious corporation. [Citation.] Rather, the exemption [citation] also benefits an organization of the requisite religious character that has chosen to organize itself in a different fashion." (Id. at p. 331, 79 Cal.Rptr.2d 319, 965 P.2d 1189.) To qualify for the religious-entity exemption, an entity need only be "`religious'" and "`not organized for private profit.'" (Id. at p. 326, 79 Cal.Rptr.2d 319, 965 P.2d 1189.)
Silo contends that even if CHWMF qualifies as a religious corporation under FEHA, it still cannot claim the religious-entity exemption unless it demonstrates that the practice and belief in the religion of the organization is a legitimate job-related requirement for its employees. Silo relies on a precedential decision of the Fair Employment and Housing Commission that concluded the religious-entity exemption applies only to allegations of religious discrimination and only in situations where the religious faith of the employee is a legitimate job requirement. (Department of Fair Employment and Housing v. Hoag Memorial Hospital Presbyterian (1985) No. 85-10, FEHC Precedential Decisions 1984-1985, CEB 14 (Hoag).)
The California Supreme Court rejected this argument in Kelly v. Methodist Hospital of California, supra, 22 Cal.4th 1108, 95 Cal.Rptr.2d 514, 997 P.2d 1169. "[The argument] that the exemption is conditioned upon the nature of the employee's job position, is easily refuted. That interpretation clearly ignores the structure of the statute itself, which predicates potential FEHA liability on the status of the defendant as an `employer.' (§ 12926.) The exemption renders qualified religious entities exempt from FEHA in its entirety. The nature of the employee's work is not relevant; the nature of the entity that employs him or her is determinative." (Kelly, supra, 22 Cal.4th at p. 1116, 95 Cal.Rptr.2d 514, 997 P.2d 1169.) The court also disapproved of Hoag, supra, No. 85-10, FHCHC Precedential Decisions 1984-1985, CEB 14. (Id. at pp. 1117-1118.) "In light of the statute's unqualified exemption of religious entity employers, it is clear the relevant version of the *833 religious-entity exemption is not limited so as to permit religious entities to discriminate, provided they do so solely on the basis of religion, nor is it limited to situations where the religious faith of the employee is a legitimate requirement of the relevant job." (Id. at p. 1119.)
Finally, Kelly rejected the argument that the exemption should not apply where the employer's primary function is the provision of health care as that function is insufficiently religious. It held the religious-entity exemption encompassed "any entity with colorable religious motivation and substantial bona fide religious affiliations." (Kelly, supra, 22 Cal.4th. at p. 1125, 95 Cal.Rptr.2d 514, 997 P.2d 1169 .)
Silo's FEHA claim fails because, at all relevant times, CHWMF was exempt from FEHA.
Defendants request that we take judicial notice of various documents in connection with this issue. These documents are directives of the California Department of Fair Housing and Employment, legislative history of certain statutes, and documents relating to the religious nature of CHWMF. Since we have found the decisions in McKeon v. Mercy Healthcare Sacramento, supra, 19 Cal.4th 321, 79 Cal. Rptr.2d 319, 965 P.2d 1189, and Kelly v. Methodist Hospital of California, supra, 22 Cal.4th 1108, 95 Cal.Rptr.2d 514, 997 P.2d 1169, dispositive on the issue, we decline the request for judicial notice.

II. Termination in Violation of Public Policy
Silo's complaint alleged his termination was unlawful discrimination "in violation of the public policy as expressed both in California Constitution Article I, § 8 that prohibits discrimination against employees on the basis of creed," and in FEHA. Defendants contend the trial court erred in instructing the jury that CHWMF could be liable in tort for terminating Silo's employment in violation of public policy.
Defendants first contend that Silo waived the constitutional basis of his wrongful termination claim. They assert the jury was not instructed on a constitutional basis for finding CHWMF discriminated against Silo in violation of public policy. Rather, the special verdict form told the jurors that if they found defendants unlawfully discriminated against Silo based on his religion, they also had to find that CHWMF terminated his employment in violation of public policy.
In closing argument Silo's counsel argued Silo sought recovery based both on unlawful religious discrimination and unlawful termination in violation of public policy. The trial court instructed the jury: "The termination of an employee in violation of public policy is a wrongful termination. An employee who was terminated in violation of public policy is entitled to recover damages from the employer. [¶] To establish a termination of employment in violation of public policy, it must be established that the termination of plaintiffs employment was a violation of public policy. [11] The public policy of the State of California is: an employer may not discriminate against an employee, on the basis of his or her religious beliefs or practices." While these instructions did not state that the public policy against religious discrimination in employment comes from the State Constitution, it did tell the jury there was a public policy against the type of discrimination Silo alleged. Silo did not waive this basis of his claim for wrongful termination.
Defendants next contend there is no clear public policy that prohibits a religious employer from taking religion into account in making employment decisions. They claim the issue of religious discrimination involves conflicting interests and implicates complex matters of policy such that there is no clear public policy giving rise to tort liability.
Where an employer's discharge of an employee violates fundamental principles *834 of public policy, the employee may bring a tort action. (Tameny v. Atlantic Richfield Co. (1980) 27 Cal.3d 167, 170, 164 Cal.Rptr. 839, 610 P.2d 1330.) In Stevenson v. Superior Court (1997) 16 Cal.4th 880, 66 Cal.Rptr.2d 888, 941 P.2d 1157, the Supreme Court articulated a four-part test for determining whether a public policy can support a common law wrongful discharge action. The policy "must be: (1) delineated in either constitutional or statutory provisions; (2) `public' in the sense that it `inures to the benefit of the public' rather than serving merely the interests of the individual; (3) well established at the time of the discharge; and (4) substantial and fundamental." (Id. at p. 894, 66 Cal. Rptr.2d 888, 941 P.2d 1157.)
The policy against religious discrimination in employment is delineated in the State Constitution. Article I, section 8 of the California Constitution provides: "A person may not be disqualified from entering or pursuing a business, profession, vocation, or employment because of sex, race, creed, color, or national or ethnic origin."
The policy inures to the benefit of the public because anyone can be a victim of religious discrimination and any type of invidious discrimination "`foments ... strife and unrest' in the workplace." (Stevenson v. Superior Court, supra, 16 Cal.4th 880, 895, 66 Cal.Rptr.2d 888, 941 P.2d 1157.) It is well established since it has been in the state Constitution since 1974.
In determining whether a policy is substantial and fundamental, we consider whether it is similar to other policies that have been declared substantial and fundamental, and whether there is broad and consistent statutory and legislative support for the policy. (Stevenson v. Superior Court, supra, 16 Cal.4th 880, 896-897, 66 Cal.Rptr.2d 888, 941 P.2d 1157; Sullivan v. Delta Air Lines, Inc. (1997) 58 Cal. App.4th 938, 943-944, 68 Cal.Rptr.2d 584.) The policies against race, sex and age discrimination in employment have been declared substantial and fundamental public policies. (Stevenson, supra, at p. 896, 66 Cal.Rptr.2d 888, 941 P.2d 1157.) While religion is not an immutable characteristic, as are sex and race and age once attained, discrimination based on religion is similar in that it "attacks the individual's sense of self-worth" and may be based on group stereotypes. (Ibid.) Further, the constitutional provision prohibiting religious discrimination parallels the broad policy against religious discrimination expressed in a variety of statutes. (See, e.g., Civ. Code, §§ 51, 51.5, 52 [public accommodations]; Gov.Code, §§ 19703, 19704 [civil service]; Gov.Code, § 65008 [zoning and land use]; Lab.Code, §§ 1735, 1777.6 [public works].) Finally, the prohibition against religious discrimination in employment serves to protect the right of freedom of religion found in the Federal and State Constitutions. (U.S. Const., 1st Amend.; Cal. Const., art. I, § 4.)
Article I, section 8 of the California Constitution "forbids disqualification of employees for religious practices unless reasonable accommodation by the employer is impossible without undue hardship." (Rankins v. Commission on Professional Competence (1979) 24 Cal.3d 167, 174, 154 Cal.Rptr. 907, 593 P.2d 852.) Defendants contend that because questions of religious discrimination in employment involve questions of reasonable accommodation and competing interests, there is no clear public policy.
In their supplemental brief, defendants rely on Sullivan v. Delta Air Lines, Inc., supra, 58 Cal.App.4th 938, 68 Cal.Rptr.2d 584, a case they claim "is on all fours" with this case. In Sullivan, plaintiff brought suit for wrongful termination in violation of the public policy of Labor Code section 1025, requiring reasonable accommodation of an employee enrolled in a rehabilitation program. The court found this policy was not substantial and fundamental. It noted that Labor Code section 1025 expressed three conflicting policies: reasonable accommodation *835 of an employee in a rehabilitation program, avoidance of undue hardship on the employer, and intolerance of drug or alcohol use that interferes with employee performance. (Id. at p. 944, 68 Cal.Rptr.2d 584.) There was no explicit declaration of the significance of these policies to enable an employer to know the fundamental public policies that are expressed in the law."' [Citation.]" (Id. at pp. 945-946, 68 Cal.Rptr.2d 584.) Section 1025 differed from race or sex discrimination, as it was not an immutable characteristic and there was no other statutory or constitutional provision buttressing the policy. (Id. at p. 946, 68 Cal. Rptr.2d 584.) The court concluded there was no consistent policy promoting the continued employment of employees undergoing alcohol or drug rehabilitation. (Ibid.)
We find Sullivan v. Delta Air Lines, Inc., supra, 58 Cal.App.4th 938, 68 Cal. Rptr.2d 584 distinguishable. The policy against religious discrimination, expressed in the Constitution and numerous statutes and reflecting the constitutional right to religious freedom, is a clear public policy, unlike the ambiguous one addressing employment of those in rehabilitation. That the policy requires only reasonable accommodation without undue hardship rather than an outright prohibition does not lead to the conclusion that it is not "substantial and fundamental."
In City of Moorpark v. Superior Court (1998) 18 Cal.4th 1143, 77 Cal.Rptr.2d 445, 959 P.2d 752, the high court considered whether the policy against disability discrimination in employment would support a common law wrongful discharge cause of action. Applying the Stevenson test, the court found the policy clearly delineated in FEHA, inuring to the public benefit and well established. (Id. at pp. 1159-1160.) In considering whether the policy was "`substantial and fundamental,'" the court noted an employer may have valid reasons to treat a disabled employee differently than a nondisabled employee and FEHA recognized this fact by requiring only reasonable accommodation. (Id. at p. 1160.) "But this caveat does not lead us to conclude that the policy against disability discrimination is not `substantial and fundamental.' Even in the case of race, sex, and age discrimination, the FEHA does not prohibit discrimination that is `based upon bona fide occupational qualification.' (Gov. Code, § 12940.) Similarly, our opinions articulating `substantial and fundamental' policies against sex and age discrimination use the term `discrimination' only in the pejorative sense to refer to arbitrary judgments about individuals based on group stereotypes. [Citation.] [¶] Disability sometimes impacts a person's ability to perform a particular job, in which case the employer may treat a disabled employee differently than a nondisabled employee. Nonetheless, if disabled employees can prove that they can perform the job duties as effectively as nondisabled employees, taking into consideration the possibility, if any, that their condition will change, as well as the employer's short- and long-term needs, then we think discrimination based on disability, like sex and age discrimination, violates a `substantial and fundamental' public policy and can form the basis of a common law wrongful discharge claim." (Id. at pp. 1160-1161.)
We recognize that the public policies expressed in article I, section 8 of the Constitution are not absolute; in some circumstances they must yield to competing concerns about the general welfare. For example, in Sistare-Meyer v. Young Men's Christian Assn. (1997) 58 Cal.App.4th 10, 67 Cal.Rptr.2d 840, the court upheld dismissal of an independent contractor's suit alleging termination of employment due to racial discrimination. The court found California Constitution, article I, section 8 was not a sufficiently clear expression of a well-established policy against discrimination by persons who engage independent contractors. (Id. at pp. 16-17, 67 Cal. Rptr.2d 840.) The court relied primarily on the long-standing distinction between *836 employees and independent contractors. (Id. at p. 16, 67 Cal.Rptr.2d 840.)
No such distinction is applicable here. This is not a case implicating First Amendment concerns that arise when a court is asked to review quintessentially religious matters, such as the employment of a minister. (See Schmoll v. Chapman University (1999) 70 Cal.App.4th 1434, 83 Cal. Rptr.2d 426 [First Amendment bars judicial review of lawsuit alleging church-affiliated university modified terms of employment of campus chaplain].)
The policy against religious discrimination in employment will support a common law action for wrongful termination. Because the policy is articulated in the Constitution, as well as in FEHA, it applies to an employer exempt from FEHA. (See Badih v. Myers (1995) 36 Cal.App.4th 1289, 43 Cal.Rptr.2d 229 [judgment for wrongful discharge in contravention of public policy (sex discrimination) upheld against small employer exempt from FEHA].) The jury found CHWMF violated public policy in terminating Silo's employment. Defendants do not challenge the sufficiency of the evidence to support this finding and it supports the jury's verdict.
Defendants contend the verdict must be reversed because the court erroneously instructed the jury that if it found a violation of FEHA, it must find a termination in violation of public policy. Although the violation of public policy is distinct from the FEHA violation, defendants do not show how religious discrimination under FEHA differs from religious discrimination in employment in violation of public policy. Accordingly, they have failed to show prejudice and reversal is not required. (Cal. Const., art. VI, § 13.)

III. Liability of Supervisors
Of the causes of action that went to trial, defendants King and Lewis were named only in the cause of action alleging a violation of FEHA. Since we have found that CHWMF was exempt from FEHA, King and Lewis as supervisors cannot be liable. Moreover, a supervisor's liability does not extend to acts of discrimination. (Reno v. Baird (1998) 18 Cal.4th 640, 76 Cal.Rptr.2d 499, 957 P.2d 1333.)

IV. Attorney Fees
The trial court awarded Silo attorney fees on two bases, that he was a prevailing party under FEHA and the private attorney general doctrine. Since CHWMF was not subject to FEHA and the FEHA claim must be reversed, Silo was not a prevailing party and is not entitled to attorney fees under Government Code section 12965, subdivision (b). We now consider whether the award was proper under the private attorney general doctrine codified in Code of Civil Procedure section 1021.5 (hereafter section 1021.5).
Section 1021.5 provides in part: "[A] court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, ... are such as to make the award appropriate, and (c) such fees should not in the interest of justice, be paid out of the recovery, if any."
"Whether to award fees under this statute is a matter within the trial court's discretion and will not be disturbed on appeal absent a showing of abuse of that discretion. But discretion may not be exercised whimsically, and reversal is required where there is no reasonable basis for the ruling or when the trial court has applied the wrong test to determine if the statutory requirements were satisfied. [Citations.]" (Flannery v. California Highway Patrol (1998) 61 Cal.App.4th 629, 634, 71 Cal.Rptr.2d 632.)
*837 In this case there can be no question but that Silo enforced an important right affecting the public interest. We have found the policy against discrimination in employment on the basis of religion to be a substantial and fundamental public policy. It is closely related to the constitutional right of religious freedom. Where a public policy of constitutional stature is vindicated, the relative social importance of the policy is established. (Serrano v. Priest (1977) 20 Cal.3d 25, 46, 141 Cal. Rptr. 315, 569 P.2d 1303, fn. 18 (Serrano III).)
The trial court found the question of whether this case conferred a significant benefit on the public or a large class of persons "a very close issue," but found the case would have significance in preventing employers from disciplining employees based on religious discussions.
Defendants contend the trial court erred in considering the precedential effect of the case in determining whether it conferred a significant benefit on the public. We disagree. The benefit conferred on the public by vindicating an important right is often the precedential effect of the decision that results from plaintiffs litigation. For example, in Bouvia v. County of Los Angeles (1987) 195 Cal.App.3d 1075, 241 Cal.Rptr. 239, the court determined plaintiff was entitled to attorney fees under section 1021.5 for an action in which she sought removal of her feeding tube. The court found plaintiffs suit helped to clarify the rights of all who receive medical treatment and expanded on existing law to declare the right to refuse medical treatment exists independent of the motivation for exercising that right. (Id. at pp. 1084-1086, 241 Cal.Rptr. 239.) The benefit to the public of plaintiffs suit, therefore, lay primarily in its precedential effect in other cases where someone sought to refuse medical treatment.
In Press v. Lucky Stores, Inc. (1983) 34 Cal.3d 311, 193 Cal.Rptr. 900, 667 P.2d 704, the Supreme Court upheld an award of attorney fees under section 1021.5.It found the vindication of free speech rights conferred a significant benefit on the public, even though such rights were already established. (Id. at pp. 318-319, 193 Cal. Rptr. 900, 667 P.2d 704.) In Serrano III, the Supreme Court recognized that attorney fees were proper under the private attorney general doctrine "simply because of the magnitude and significance of the fundamental constitutional principles involved in that litigation and the benefit that flowed to the general public in having such principles enforced." (Woodland Hills Residents Assn., Inc. v. City Council (1979) 23 Cal.3d 917, 939, 154 Cal.Rptr. 503, 593 P.2d 200.)
In Best v. California Apprenticeship Council (1987) 193 Cal.App.3d 1448, 240 Cal.Rptr. 1, the court upheld an award of attorney fees under section 1021.5 to a plaintiff who sought a writ of mandate to set aside a decision of California Apprenticeship Council denying an apprentice's request for exemption based on religious beliefs from assignment to a nuclear powerplant. "Since the case litigated the constitutional right to the accommodation of religious beliefs in the employment context, it conferred a benefit on the general public. [Citation.]" (Id. at p. 1468, 240 Cal.Rptr. 1.)
Here, too, this case involved the enforcement of a fundamental public policy rooted in constitutional rights. The case confirmed that the right to be free of religious discrimination in employment applies even to employees who work for employers that are exempt from FEHA, such as a religiously affiliated corporation. In vindicating this important right, the case conferred a significant benefit on the public.
We recognize that in Weeks v. Baker & McKenzie (1998) 63 Cal.App.4th 1128, 1170, 74 Cal.Rptr.2d 510, and Flannery v. California Highway Patrol, supra, 61 Cal. App.4th 629, 635-636, 71 Cal.Rptr.2d 632, Division One of the First District held that section 1021.5 did not authorize attorney fees in an employment discrimination case. *838 In both cases, however, attorney fees were available under FEHA. "[T]he private attorney general doctrine codified in section 1021.5 is based on the premise that without some mechanism authorizing a fee award, private actions that effectuate fundamental public policies may be infeasible. [Citation.]" (Flannery, supra, at p. 637, 71 Cal.Rptr.2d 632.) FEHA provided the mechanism in Flannery and Weeks, so resort to section 1021.5 was unnecessary; there is no mechanism other than section 1021.5 here.
Defendants contend the trial court abused its discretion in determining that the burden of private enforcement made a fee award appropriate. Defendants argue Silo's personal stake in the outcome of the litigation was sufficient to warrant incurring the costs of litigation. In assessing his personal stake, we do not look to the actual recovery, but to "`"the estimated value of the case at the time the vital litigation decisions were being made."' [Citation.]" (Satrap v. Pacific Gas & Electric Co. (1996) 42 Cal.App.4th 72, 79, 49 Cal.Rptr.2d 348.) Defendants point out that until the court granted a nonsuit during trial, Silo expected to recover punitive damages. "Private attorney general fees are not intended to provide insurance for litigants and counsel who misjudge the value of their case, and vigorously pursue the litigation in the expectation of recovering substantial damages, and then find that the jury's actual verdict is not commensurate with their expenditure of time and resources. Instead, its purpose is to provide some incentive for the plaintiff who acts as a true private attorney general, prosecuting a lawsuit that enforces an important public right and confers a significant benefit, despite the fact that his or her own financial stake in the outcome would not be itself constitute an adequate incentive to litigate." (Id. at pp. 79-80, 49 Cal.Rptr.2d 348.)
In assessing this factor, the trial court noted there was some inconsistency between Silo's initial position, seeking damages for emotional distress and malicious prosecution, as well as punitive damages, and his request for fees under section 1021.5. Nonetheless, the court found Silo's personal stake in the litigation was not that great, as he had an entry level position and no real expectancy of significant economic damages. "The trial court, having presided over the trial and heard all the evidence and arguments, is in a far better position than this court to assess what the plaintiffs realistic expected recovery was in this case, and we shall defer to its judgment." (Satrap v. Pacific Gas & Electric Co., supra, 42 Cal.App.4th 72, 80, 49 Cal.Rptr.2d 348.)
Defendants do not challenge the trial court's finding on the final statutory requirement that fees should not be paid out of the recovery. We find no abuse of discretion in the award of attorney fees under section 1021.5.
The starting point in determining a reasonable attorney fee is the `lodestar' figure based on a `careful compilation of the time spent and reasonable hourly compensation for each attorney ... involved in the presentation of the case.'" (Press v. Lucky Stores, Inc., supra, 34 Cal.3d 311, 322, 193 Cal.Rptr. 900, 667 P.2d 704, quoting Serrano III, supra, 20 Cal.3d 25, 48, 141 Cal.Rptr. 315, 569 P.2d 1303.) The lodestar figure may be adjusted, upward or downward, upon consideration of various relevant factors, including the novelty and difficulty of the case, the skill in presenting it, the extent to which the litigation precluded other employment, and the contingent nature of the fee award. (Serrano III, supra, at p. 49, 141 Cal.Rptr. 315, 569 P.2d 1303.) The factors listed in Serrano III are not exclusive. (Californians for Responsible Toxics Management v. Kizer (1989) 211 Cal.App.3d 961, 973, 259 Cal.Rptr. 599.) Courts have also considered the amount involved and the results obtained. (Aetna Life & Casualty Co. v. City of Los Angeles (1985) 170 Cal.App.3d 865, 881, 216 Cal.Rptr. 831; Glendora Community Redevelopment *839 Agency v. Demeter (1984) 155 Cal.App.3d 465, 474-476, 202 Cal.Rptr. 389.)
"The `experienced trial judge is the best judge of the value of professional services rendered in his court, and while his judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong.' [Citations.]" (Serrano III, supra, 20 Cal.3d at p. 49, 141 Cal.Rptr. 315, 569 P.2d 1303.)
Defendants contend the trial court abused its discretion in the amount of the attorney fee award. They do not challenge the lodestar amount, but assert that the limited success of plaintiffs case, resulting in a money judgment of only $6,305, required that a fractional multiplier be applied to the lodestar figure.
Under state law "a reduced fee award is appropriate when a claimant achieves only limited success." (Sokolow v. County of San Mateo (1989) 213 Cal. App.3d 231, 249, 261 Cal.Rptr. 520.) In Sokolow, the plaintiff challenged as discriminatory the male-only policy of a private patrol with close ties to the sheriffs department. She sought to become a member of the patrol. Plaintiff prevailed in her argument that the close ties made the patrol's male-only membership policy discriminatory state action. The remedy was to force the sheriffs department to sever such ties; plaintiff did not gain admittance to the patrol and did not entirely eliminate the County's training and use of the patrol for search and rescue missions. The court found plaintiff was a prevailing party entitled to attorney fees, but that the trial court should consider her limited success in setting a reasonable fee. (Id. at pp. 244, 250, 261 Cal.Rptr. 520.)
Silo did not prevail on all of his causes of action, and the lodestar figure was reduced to reflect this lack of success. On appeal we have found he did not prevail on his FEHA claim, but he did completely prevail on his claim that CHWMF discriminated against him on the basis of religion and terminated his employment in violation of public policy. Since this claim supports the verdict, as to Silo's claim of religious discrimination, his success was complete.
Defendants' argument focuses on the limited monetary success of Silo's action. To the extent defendants' argument for reducing the amount of attorney fees is based on the relatively small amount of compensatory damages, we reject it outright. The economic damages were more than nominal; they represented several months' wages. That Silo was in a low paid position so that his lost wages amounted to significantly less than the amount of attorney fees supports rather than diminishes his right to recover attorney fees under section 1021.5.
Defendants argue that the lodestar amount should be significantly reduced to deter pointless litigation. They contend that if Silo did not hope to recover significant damages, he should have settled the case. He should not be rewarded for further litigation which served only to run up attorney fees. If his aim was significant damages, he seriously miscalculated and CHWMF should not pay the price of that miscalculation.
First, defendants ignore that in litigating this case Silo vindicated a substantial and fundamental public policy against discrimination in employment on the basis of religion. As we have found attorney fees were appropriate under section 1021.5 for litigating an important right where the financial stake in the outcome is disproportionate to the cost of litigation, any argument that Silo's limited recovery does not support the award of attorney fees is unavailing.
Second, defendants' argument that the fee award should be reduced because Silo refused to settle lacks merit. Silo filed his complaint in April 1994. The issue of settlement was first raised by Silo's counsel in January 1995. At the end of discovery, Silo offered to settle the case for $75,000, which included attorney fees *840 and costs; the offer expired April 19, 1995. In May 1995, Silo made a settlement offer pursuant to Code of Civil Procedure section 998 of $80,000. Defendants responded with a statutory settlement offer of $10,000 plus costs but excluding attorney fees.[4] The mandatory settlement conference failed to produce a settlement. Defendants offered $70,000 and Silo wanted $100,000. Just before trial defendants offered $90,000, but Silo still demanded $100,000. Silo's attorney fees at that time were almost $90,000 and his costs were nearly $8,000.
Defendants argue that Silo should have come down $10,000 and accepted the $90,000, although it would not have fully covered his attorney fees and expenses at that point, rather than proceeding with trial and incurring additional fees.. The stubbornness in settlement negotiations cuts both ways; both sides refused to budge $10,000. If defendants had come up $10,000 and settled for $100,000, no additional attorney fees would have been incurred. Defendants provide no authority that mutual obstinance in settlement negotiations requires a reduction in attorney fees.
We find no abuse of discretion in awarding the reduced lodestar amount as attorney fees.

DISPOSITION
The judgment against King and Lewis is reversed. The judgment against CHWMF is affirmed. Silo shall recover his costs on appeal.
CALLAHAN, J., concurs.
Concurring opinion of SIMS, J.
I concur in the majority opinion.
In City of Moorpark v. Superior Court (1998) 18 Cal.4th 1143, 77 Cal.Rptr.2d 445, 959 P.2d 752, our Supreme Court reviewed the evolution of the "public policy" tort discussed in Rojo v. Kliger (1990) 52 Cal.3d 65, 276 Cal.Rptr. 130, 801 P.2d 373, Gantt v. Sentry Insurance (1992) 1 Cal.4th 1083, 4 Cal.Rptr.2d 874, 824 P.2d 680, Jennings v. Marralle (1994) 8 Cal.4th 121, 32 Cal.Rptr.2d 275, 876 P.2d 1074, and Stevenson v. Superior Court (1997) 16 Cal.4th 880, 66 Cal.Rptr.2d 888, 941 P.2d 1157, as follows:
"In Stevenson, we articulated a four-part test for determining whether a particular policy can support a common law wrongful discharge claim. The policy must be: (1) delineated in either constitutional or statutory provisions; (2) public in the sense that it inures to the benefit of the public rather than serving merely the interests of the individual; (3) well established at the time of the discharge; and (4) substantial and fundamental. (Stevenson, supra, 16 Cal.4th at p. 894, 66 Cal.Rptr.2d 888, 941 P.2d 1157; see also Jennings v. Marralle, supra, 8 Cal.4th at p. 130, 32 Cal.Rptr.2d 275, 876 P.2d 1074; Gantt, supra, 1 Cal.4th at pp. 1090, 1095, 4 Cal.Rptr.2d 874, 824 P.2d 680; Rojo, supra, 52 Cal.3d at pp. 89-90, 276 Cal.Rptr. 130, 801 P.2d 373.)[P]ublic policy as a concept is notoriously resistant to precise definition, and ... courts should venture into this area, if at all, with great care.... (Gantt, supra, 1 Cal.4th at p. 1095, 4 Cal.Rptr.2d 874, 824 P.2d 680.) Therefore, when the constitutional provision or statute articulating a public policy also includes certain substantive limitations in scope or remedy, these limitations also circumscribe the common law wrongful discharge cause of action. Stated another way, the common law cause of action cannot be broader than the constitutional provision or statute on which it depends, and therefore it presents no impediment to employers that operate within the bounds of law. (Ibid.) For example, in Jennings, we noted that the FEHA does not apply to *841 employers of fewer than five employees (Gov.Code, § 12926, subd. (d)), and therefore we found no fundamental public policy against age discrimination by these employers. (Jennings v. Marralle, supra, 8 Cal.4th at pp. 135-136, 32 Cal.Rptr.2d 275, 876 P.2d 1074; see also Reno v. Baird (1998) 18 Cal.4th 640, 663-664, 76 Cal. Rptr.2d 499, 957 P.2d 1333.)" (City of Moorpark v. Superior Court, supra, 18 Cal.4th at p. 1159, 77 Cal.Rptr.2d 445, 959 P.2d 752, internal quotation marks omitted.)
In the instant case, plaintiff locates his public policy in Article I, section 8 of the California Constitution. That provision contains no limitation that would bar its application to a religiously-affiliated corporation, even though the corporation is exempt from liability under the FEHA (California Fair Employment and Housing Act).
Although I think that CHWMF (CHW Medical Foundation) is properly held liable under this theory, I also think the result makes for manifestly bad policy: a corporation is held liable despite the Legislature's considered judgment that (for its own reasons of policy) it ought not be.
On this question, I subscribe to the views of Justice Brown as set forth in her dissenting opinions in Stevenson v. Superior Court, supra, 16 Cal.4th at page 911, 66 Cal.Rptr.2d 888, 941 P.2d 1157 and in City of Moorpark v. Superior Court, supra, 18 Cal.4th at page 1161, 77 Cal.Rptr.2d 445, 959 P.2d 752. To date, these views have not persuaded a majority of our Supreme Court; consequently, I am duty bound to follow the majority rule. (See Auto Equity Sales, Inc. v. Superior Court (1962) 57 Cal.2d 450, 455, 20 Cal.Rptr. 321, 369 P.2d 937.)
NOTES
[1] Also named as defendants were Medical Clinic of Sacramento, Inc ., which was dismissed with prejudice, and Mercy Healthcare Sacramento and Catholic Healthcare West, corporations related to CHWMF. These two corporations successfully moved for summary judgment on the basis that they had no role in Silo's employment.
[2] Defendants suggest that a contingency fee agreement that splits court-awarded attorney fees with the client may violate rule 1-320 of the Rules of Professional Conduct. Rule 1-320(A) prohibits a lawyer from directly or indirectly sharing legal fees with a person who is not a lawyer. The contingent fee agreement between Silo and his attorneys is not before this court. We express no opinion as to whether it complies with the Rules of Professional Conduct.
[3] In 1999, sections 12922 and 12926.2 were added to the Government Code. (Stats. 1999, ch. 913, §§ 1-2.) Section 12922 provides: "Notwithstanding any other provision of this part, an employer that is a religious corporation may restrict eligibility for employment in any position involving the performance of religious duties to adherents of the religion for which the corporation is organized." Section 12926.2 provides definition of "religious corporation," "religious duties," and "employer." It further provides that "employer" includes "a religious corporation or association with respect to persons employed by the religious association or corporation to perform duties, other than religious duties, at a health care facility operated by the religious association or corporation for the provision of health care that is not restricted to adherents of the religion that established the association or corporation." (Gov.Code, § 12926.2, subd. (c).) These sections became effective January 1, 2000, and have no application to this case.
[4] Because Silo prevailed on his tort cause of action for discrimination, attorney fees and costs incurred before the statutory settlement offer must be added to the judgment to determine if he had a greater recovery than the statutory offer. (Adam v. DeCharon (1995) 31 Cal.App.4th 708, 713, 37 Cal.Rptr.2d 195.)