[No. B105274. Second Dist., Div. Four. Oct. 1, 1997.]

ANNA MARIA SISTARE-MEYER, Plaintiff and Appellant, v.
YOUNG MEN'S CHRISTIAN ASSOCIATION OF METROPOLITAN
LOS ANGELES et al., Defendants and Respondents.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part A.

**COUNSEL**

Roxborough, Pomerance & Gallegos, Drew E. Pomerance and Laura H. Park for Plaintiff and Appellant.

Lynberg & Watkins, Stephen M. Harber and Denah H. Yoshiyama for Defendants and Respondents.

**OPINION**

**BARON, J.**—Appellant Anna Maria Sistare-Meyer, doing business as Children in Motion, challenges a final judgment dismissing her single cause of action for wrongful termination in violation of public policy. We affirm.

### RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The parties do not dispute the following facts: In 1991, appellant entered into a contract with respondent Young Men's Christian Association of Metropolitan Los Angeles to provide a program of teaching, dancing, and tumbling at its Crenshaw branch. Respondents Gregory Burks and Cynthia Boutte were managers of the Crenshaw branch. The contract was designated as an independent contractor agreement and provided that the contract could be terminated upon one week's notice. In March 1993, the Crenshaw branch notified appellant that it was terminating the contract.[1]

On May 25, 1994, appellant filed a complaint against respondents and several other parties, asserting causes of action for racial discrimination in violation of Government Code section 12940, wrongful discharge in violation of public policy, breach of the implied covenant of good faith and fair dealing, and defamation. The complaint alleged that respondents had terminated her contract because she is Caucasian.

---

[1]In early 1993, appellant entered into another contract on similar terms with respondents to provide an adult fitness program at the Crenshaw branch. This second contract, which appellant terminated in February 1993, is not pertinent to the issues on appeal.

Following the trial court's ruling on respondents' motion for summary judgment and several other rulings, respondents filed a motion *in limine* to preclude appellant from presenting any evidence concerning her sole remaining claim for wrongful discharge in violation of public policy.[2] The motion contended that, as a matter of law, appellant could not state such a claim because she had been an independent contractor. The trial court granted this motion, and judgment in respondents' favor was filed on July 5, 1996. Appellant appealed from this judgment on July 26, 1996.

DISCUSSION

A. *Timeliness of Appeal**

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

B. *Objection to All the Evidence*

■■■ Appellant contends that the trial court erred in granting the motion *in limine* to preclude appellant from presenting any evidence concerning her single remaining claim for wrongful discharge in violation of public policy. The trial court concluded that appellant could not state such a claim because she had been an independent contractor.

■■■ " 'An objection to the introduction of any evidence on the ground that a complaint fails to state a cause of action is in the nature of a general demurrer to the complaint or a motion by a defendant for judgment on the pleadings.' [Citation.]" (*Clemens* v. *American Warranty Corp.* (1987) 193 Cal.App.3d 444, 451 [238 Cal.Rptr. 339], quoting *Miller* v. *McLaglen* (1947) 82 Cal.App.2d 219, 223 [186 P.2d 48].) Such motions are reviewed de novo under the standards applicable to judgments following the sustaining of a demurrer. (See *Ott* v. *Alfa-Laval Agri, Inc.* (1995) 31 Cal.App.4th 1439, 1448 [37 Cal.Rptr.2d 790].) Thus, an objection to all the evidence is properly sustained when even if the plaintiff's allegations were proved, they would not establish a cause of action. (*Clemens* v. *American Warranty Corp., supra,* at p. 451.)

■■■ The threshold procedural issue is whether the trial court properly relied on respondents' contentions about appellant's status as an independent contractor and the nature of the pertinent contract when the complaint lacks

---

[2]We omit here the procedural history of the proceedings below that is irrelevant to the published portion of this opinion. This complex history is summarized in the nonpublished portion.

*See footnote, *ante,* page 10.

allegations about these matters. Because appellant conceded these contentions, they may be treated as judicial admissions for the purpose of testing the sufficiency of the complaint. (See *Scafidi* v. *Western Loan & Bldg. Co.* (1946) 72 Cal.App.2d 550, 560-562 [165 P.2d 260].)

The key legal question, then, is whether appellant can state a claim for wrongful discharge in violation of public policy. In *Tameny* v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 169-170 [164 Cal.Rptr. 839, 610 P.2d 1330], our Supreme Court held that employees may bring an action in tort when their discharge contravenes the dictates of fundamental public policy. This cause of action "is an exception to the general rule, now codified in Labor Code section 2922, that unless otherwise agreed by the parties, an employment is terminable at will." (*Jennings* v. *Marralle* (1994) 8 Cal.4th 121, 129 [32 Cal.Rptr.2d 275, 876 P.2d 1074], fn. omitted.) Although we recognize the pernicious ills created by discrimination, our analysis concludes that an independent contractor cannot assert a *Tameny* claim predicated on allegations of a race-based discharge.

■ Crucial to a *Tameny* claim is the existence of a pertinent public policy. "[A] policy may support a wrongful discharge claim only if it satisfies four requirements. The policy must be (1) delineated in either constitutional or statutory provisions; (2) 'public' in the sense that it 'inures to the benefit of the public' rather than serving merely the interests of the individual; (3) well established at the time of the discharge; and (4) 'substantial' and 'fundamental.' " (*Stevenson* v. *Superior Court* (1997) 16 Cal.4th 880, 901 [66 Cal.Rptr.2d 888, 941 P.2d 1157].)

■ Appellant's key evidence that a pertinent policy supports her *Tameny* claim is article I, section 8 of the California Constitution, which provides that "[a] person may not be disqualified from entering or pursuing a business, profession, vocation, or employment because of sex, race, creed, color, or national or ethnic origin." This provision supports *Tameny* actions alleging race-based terminations of the employer-employee relationship. In *Rojo* v. *Kliger* (1990) 52 Cal.3d 65 [276 Cal.Rptr. 130, 801 P.2d 373], a case in which employees alleged a tortious discharge based on sex discrimination, the Supreme Court stated that this constitutional provision "unquestionably reflects a fundamental *public policy* against discrimination in employment— public or private—on account of sex," and that "[n]o extensive discussion is needed to establish the fundamental *public* interest in a workplace free from the pernicious influence of sexism." (*Id.* at pp. 71, 89-90, original italics.) Article I, section 8 clearly states a similar fundamental public policy against racism in private employment and in the workplace. (*Carmichael* v. *Alfano Temporary Personnel* (1991) 233 Cal.App.3d 1126, 1131-1132 [285

Cal.Rptr. 143] [policy stated in section 8 supports employee's *Tameny* claim alleging race-based termination].)

The question thus presented is whether the policy stated in California Constitution, article I, section 8 reaches beyond the employer-employee relationship to encompass those who hire independent contractors. This question does *not* require us to determine whether section 8 accords independent contractors constitutional rights against private parties with whom they contract. As the court in *Rojo* explained, whether this section applies exclusively to state action is largely irrelevant to whether it expresses a fundamental public policy against public and private employment discrimination.[4] (See *Rojo* v. *Kliger, supra,* 52 Cal.3d at p. 90.)

The question before us is closely related to another sort of question, namely, whether a given contract is void as a matter of public policy. In *Gantt* v. *Sentry Insurance* (1992) 1 Cal.4th 1083, 1093-1094 [4 Cal.Rptr.2d 874, 824 P.2d 680], the court explained the connection between these questions: "The analogy to illegal contracts has particular force. For at root, the public policy exception rests on the recognition that in a civilized society the rights of each person are necessarily limited by the rights of others and of the public at large; this is the delicate balance which holds such societies together. Accordingly, while an at-will employee may be terminated for no reason, or for an arbitrary or irrational reason, there can be no right to terminate for an unlawful reason or for a purpose that contravenes fundamental public policy. Any other conclusion would sanction lawlessness, which courts by their very nature are bound to oppose. [Citation.] It is a very short and logical step, therefore, from declining to enforce contracts inimical to law or the public interest, to refusing to sanction terminations in contravention of fundamental public policy."

We are thus guided by the principles applicable to the determination of public policy. These principles urge caution upon the courts. "The question whether a contract violates public policy necessarily involves a degree of subjectivity. Therefore, '. . . courts have been cautious in blithely applying

---

[4]Citing *Rojo,* appellant suggests that California Constitution, article I, section 8 grants employees and independent contractors rights against private parties who hire them. However, although the court in *Rojo* stated in dicta that section 8 "covers private as well as state action," the *Rojo* court did not resolve whether section 8 grants such rights. (See *Rojo* v. *Kliger, supra,* 52 Cal.3d at pp. 89-90.) We are unaware of any case since *Rojo* in which the court squarely has decided this issue, as opposed to holding that section 8 expresses a policy supporting a *Tameny* action against a private employer. Because a policy consideration supporting a *Tameny* claim must be *"articulated* at the time of the discharge" (*Stevenson* v. *Superior Court, supra,* 16 Cal.4th at p. 893), we do not address the scope of the rights that section 8 accords, and restrict our inquiry to determining the limits of the policy that it expresses.

public policy reasons to nullify otherwise enforceable contracts. This concern has been graphically articulated by the California Supreme Court as follows: "It has been well said that public policy is an unruly horse, astride of which you are carried into unknown and uncertain paths[.] While contracts opposed to morality or law should not be allowed to show themselves in courts of justice, yet public policy requires and encourages the making of contracts by competent parties upon all valid and lawful considerations, and courts so recognizing have allowed parties the widest latitude in this regard; and, unless it is entirely plain that a contract is violative of sound public policy, a court will never so declare. . . ." ' [Citation.] (*Moran* v. *Harris* (1982) 131 Cal.App.3d 913, 919-920 . . . , quoting *Stephens* v. *Southern Pacific Co.* (1895) 109 Cal. 86, 89-90 . . . .)" (*Bovard* v. *American Horse Enterprises, Inc.* (1988) 201 Cal.App.3d 832, 838-839 [247 Cal.Rptr. 340].) Similarly, the *Gantt* court warned in the context of the *Tameny* claim that " 'public policy' as a concept is notoriously resistant to precise definition, and that courts should venture into this area, if at all, with great care and due deference to the judgment of the legislative branch, 'lest they mistake their own predilections for public policy which deserves recognition at law.' [Citation.]" (*Gantt* v. *Sentry Insurance, supra,* 1 Cal.4th at p. 1095, quoting *Hentzel* v. *Singer Co.* (1982) 138 Cal.App.3d 290, 297 [188 Cal.Rptr. 159].)

The key issue, therefore, is whether California Constitution, article I, section 8 is a sufficiently clear expression of a well-established policy against discrimination by persons who engage independent contractors to perform work or services. Because section 8, regarded as a constitutional provision, does not proscribe discriminatory practices resting on suitably cogent justifications (see *Rankins* v. *Commission on Professional Competence* (1979) 24 Cal.3d 167, 174 [154 Cal.Rptr. 907, 593 P.2d 852]), we infer that the policy against discrimination stated by section 8 also yields in some circumstances to competing concerns about the general welfare.

Here, the long-standing distinction between employees and independent contractors presents important competing policy concerns. California common and statutory law distinguishes independent contractors from employees, and their statuses, though both rooted in contract, are significantly different. (See *S. G. Borello & Sons, Inc.* v. *Department of Industrial Relations* (1989) 48 Cal.3d 341, 350 [256 Cal.Rptr. 543, 769 P.2d 399].) Independent contractors typically have greater control over the way in which they carry out their work than employees, and businesses assume fewer duties with respect to independent contractors than employees.[5] (See 48 Cal.3d at pp. 349-354.) Thus, the independent contractor status provides the

---

[5]At common law, this distinction limits the hiring party's liability for injuries to third parties caused by employees. (See *S. G. Borello & Sons, Inc.* v. *Department of Industrial*

hiring party and the worker with an alternative relationship that gives each more freedom and flexibility than the employer-employee relationship.

Neither California Constitution, article I, section 8 nor the body of law concerning independent contractors clearly favors the public interest in curbing discrimination over the existing social benefits attached to the independent contractor-hiring party relationship. In this regard, we observe that independent contractors generally cannot bring statutory discrimination-based actions against private parties who hire them. (See *Sada* v. *Robert F. Kennedy Medical Center* (1997) 56 Cal.App.4th 138, 157-159 [65 Cal.Rptr.2d 112]; Cal. Code Regs., tit. 2, § 7286.5, subd. (b)(1) [Gov. Code, §§ 12940, 12941]; *Lumia* v. *Roper Pump Co.* (N.D.Cal. 1989) 724 F.Supp. 694, 697 [Gov. Code, § 12941]; *Mitchell* v. *Frank R. Howard Memorial Hosp.* (9th. Cir. 1988) 853 F.2d 762, 766 [title VII].)

In our view, the uncertainties concerning the balance of competing public interests bar us from finding that the policy asserted by California Constitution, article I, section 8 supports appellant's *Tameny* claim. As our Supreme Court explained in *Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654, 694 [254 Cal.Rptr. 211, 765 P.2d 373], when, as here, ". . . [s]ignificant policy judgments affecting social policies and commercial relationships are implicated in the resolution of [a] question[,] . . . [s]uch a determination, which has the potential to alter profoundly the nature of employment, the cost of products and services, and the availability of jobs, arguably is better suited to legislative decisionmaking. [Citations.]"

Our conclusion finds additional support in *Abrahamson* v. *NME Hospitals, Inc.* (1987) 195 Cal.App.3d 1325 [241 Cal.Rptr. 396] and *Harris* v. *Atlantic Richfield Co.* (1993) 14 Cal.App.4th 70 [17 Cal.Rptr.2d 649]. In *Abrahamson*, the court concluded that a doctor could not state a *Tameny* claim against a hospital because his contract with the hospital provided that he was an independent contractor, and that the hospital could terminate the contract without cause. (See *Abrahamson* v. *NME Hospitals, Inc., supra*, at pp. 1328-1329.) Furthermore, in *Harris*, the court held that *Tameny* claims do not arise from commercial contracts because no existing case recognized such a claim outside the employment relationship, and in the pertinent

---

*Relations, supra*, 48 Cal.3d at p. 354; *Bostrom* v. *County of San Bernardino* (1995) 35 Cal.App.4th 1654, 1665-1668 [42 Cal.Rptr.2d 669].) Under the Labor Code, the distinction serves the goals of the workers' compensation scheme, including insulating hiring parties from tort liability for industrial injuries, by placing the risk of " 'no-fault' work injuries" directly on independent contractors, rather than on their principals. (See *S. G. Borello & Sons, Inc.* v. *Department of Industrial Relations, supra*, at p. 354.)

circumstances the duty of judicial restraint precluded extending *Tameny* claims beyond this relationship. (See *Harris* v. *Atlantic Richfield Co., supra,* at pp. 75, 80-82.)

Appellant argues to the contrary that the public policy against discriminatory terminations encompasses independent contractors, citing *Board of County Commrs.* v. *Umbehr* (1996) 518 U.S. 668 [116 S.Ct. 2342, 135 L.Ed.2d 843], and *O'Hare Truck Service, Inc.* v. *City of Northlake* (1996) 518 U.S. 712 [116 S.Ct. 2353, 135 L.Ed.2d 874]. However, these cases do not provide guidance on the issues before us. In both cases, the federal high court held solely that independent contractors could assert against public entities federal statutory claims that they had been terminated for asserting their First Amendment rights under the federal Constitution, given the constitutional constraints against interference by public entities with freedom of political speech. (See *Board of County Commrs.* v. *Umbehr, supra,* 518 U.S. at pp. __ [116 S.Ct. at pp. 2345-2352]; *O'Hare Truck Service, Inc.* v. *City of Northlake, supra,* 518 U.S. at pp. __ [116 S.Ct. at pp. 2356-2360].) These cases do not address *Tameny* claims, and do not resolve or reduce the uncertainties surrounding the policy expressed by California Constitution, article I, section 8 with respect to race-based discharges of independent contractors by private parties.

Appellant also contends that recently enacted Proposition 209 announces a public policy precluding discrimination against independent contractors. (See Cal. Const., art. I, § 31, added by initiative, Gen. Elec. (Nov. 5, 1996) commonly known as Proposition 209.) We disagree. In interpreting a constitutional provision enacted by the voters, we look first at the words of the provision to determine the voters' intent. (See *Delaney* v. *Superior Court* (1990) 50 Cal.3d 785, 798 [268 Cal.Rptr. 753, 789 P.2d 934], quoting *Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) The plain language of Proposition 209 indicates that it was intended to enhance the antidiscrimination provisions in California Constitution, article I, section 8 by prohibiting certain forms of preferential treatment by the *state.*[6] We do not find any new evidence of a fundamental public policy concerning discrimination by private parties against independent contractors.

In sum, we conclude that under *Tameny* and its progeny, independent contractors cannot assert *Tameny* claims predicated on race-based terminations.

---

[6]California Constitution, article I, section 31, subdivision (a) provides: "The state shall not discriminate against, or grant preferential treatment to, any individual or group on the basis of race, sex, color, ethnicity, or national origin in the operation of public employment, public education, or public contracting."

## DISPOSITION

The judgment is affirmed.

Vogel (C. S.), P. J., and Epstein, J., concurred.

Appellant's petition for review by the Supreme Court was denied Janurary 21, 1998. Mosk, J., and Kennard, J., were of the opinion that the petition should be granted.