# United States Court of Appeals

## For the Eighth Circuit

_____

No. 17-2724

_____

Aaron Vilcek; Douglas A. Uchendi; Jeffrey Hamilton; Robert Glynn

*Plaintiffs - Appellants*

v.

Uber USA, LLC

*Defendant*

Uber Technologies, Inc.

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: April 11, 2016
Filed: August 30, 2018

_____

Before BENTON, MELLOY, and GRASZ, Circuit Judges.

_____

BENTON, Circuit Judge.

Four taxicab drivers sued Uber Technologies, Inc., in Missouri state court, individually and for a putative class. They alleged tortious interference with a valid

business expectancy and sought damages. After Uber removed the case, the district court dismissed for failure to state a claim. ***Vilcek v. Uber USA, LLC***, No. 4:15CV1900 HEA, 2016 WL 8674064, at *4 (E.D. Mo. Sept. 30, 2016). The drivers appeal. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

In September 2015, Uber began offering rides for hire in St. Louis.[1] About two months later, the drivers sued. The drivers are all licensed by the St. Louis Metropolitan Taxicab Commission (MTC), and the class would be defined as all drivers licensed by the MTC. The MTC was "created for the public purposes of recognizing taxicab service as a public transportation system, improving the quality of the system, and exercising primary authority over the provision of licensing, control and regulations of taxicab services" in St. Louis. **§ 67.1804**.[2] It has the power to "[a]dopt a taxicab code to license and regulate taxicab companies and individual taxicabs, and to provide for the enforcement of such code . . . ." **§ 67.1808(8)**.

The MTC Code says, "No person shall operate a vehicle for hire in [St. Louis] without first obtaining a MTC driver's license . . . ." **MTC, Vehicle for Hire Code § 401(A)** (rev. 5/31/2017). A driver must have a valid Missouri "chauffer's license" to be eligible for a MTC license. **§ 401(B)(4)**. Prospective MTC drivers are subject to a "background check." **§ 401(B)(5)**. *See* **§ 67.1819** (requiring MTC to request background checks). When Uber entered the St. Louis market, this background check required "fingerprint identification" of drivers. **Vehicle for Hire Code § 401(B)(5)** (rev. 8/22/2011). *See* **§ 67.1819** (requiring fingerprinting).

---

[1]St. Louis, in this opinion, refers to both the city of St. Louis and St. Louis County.

[2]All statutory citations in the text are to RSMo 2016.

The Amended Complaint alleges the following facts, which this court assumes to be true, construing all reasonable inferences most favorably to the drivers. *See Ray v. ESPN, Inc.*, 783 F.3d 1140, 1142 (8th Cir. 2015). Uber's services are "indistinguishable from the incumbent taxicab services." In September 2015, the MTC "voted . . . to allow Uber to operate in St. Louis." "The MTC directed, however, that Uber drivers be fingerprinted and possess a Class E Missouri chauffeur's license, the same as all other taxicab drivers." Uber immediately began providing services in St. Louis. However, "with intentional . . . disregard for the MTC's authority and rules," it "us[ed] drivers who do not comply with the [MTC Code's] licensing requirements." Uber's violation "continues to this day."[3] "A significant portion of the rides provided by Uber in St. Louis . . . would have gone to plaintiffs and the class but for Uber's entry." The drivers and other MTC drivers—who previously had a "steady" business—saw "decreases in revenue of 30-40%" resulting from a "decrease in passenger calls."

The district court dismissed the Amended Complaint, reasoning that the taxicab drivers had not alleged a valid business expectancy. This court reviews "de novo a district court's grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)," and "may affirm the judgment below on any ground supported by the record . . . ." *Wartman v. United Food and Comm. Workers Local 653*, 871 F.3d 638, 640 (8th Cir. 2017); *Christiansen v. West Branch Cmty. Sch. Dist.*, 674 F.3d 927, 934 (8th Cir. 2012).

---

[3]In August 2017, after the district court's decision, Missouri established a new regulatory framework for "transportation network companies," including Uber. *See* **§§ 387.400-387.440 RSMo Supp. 2017**. The drivers do not allege that Uber violated the new regulatory framework. They seek damages only from September 2015 to August 2017.

II.

To state a claim for tortious interference with a business expectancy, the taxicab drivers must properly allege: "(1) a valid business expectancy; (2) defendant's knowledge of the relationship; (3) a breach induced or caused by defendant's intentional interference; (4) absence of justification; and (5) damages." *Stehno v. Sprint Spectrum, L.P.*, 186 S.W.3d 247, 250 (Mo. banc 2006). A valid business expectancy is a "reasonable expectation of economic advantage or commercial relations." *Sloan v. Bankers Life & Cas. Co.*, 1 S.W.3d 555, 565 (Mo. App. 1999) (internal quotation marks omitted). "[M]ere hope" is not enough. *Stehno*, 186 S.W.3d at 250. The expectancy must be "reasonable and valid under the circumstances presented." *Western Blue Print Co., LLC v. Roberts*, 367 S.W.3d 7, 19 (Mo. banc 2012).

The drivers allege that before Uber entered the St. Louis market, they expected that the "public seeking ride-for-hire services" would continue to ride with MTC drivers in steady numbers. The district court held this insufficient, partly because it does not identify specific passengers. *Vilcek*, 2016 WL 8674064, at *3. The drivers argue they need not identify specific passengers, citing Missouri cases. *See, e.g.*, *Bell v. May Dept. Stores Co.*, 6 S.W.3d 871, 877 (Mo. banc 1999) ("valid credit expectancy" exists where "plaintiff *expect[s]* to apply for credit" and has "a *reasonable chance* of obtaining credit" (emphasis in original)); *Carter v. St. John's Reg'l Med. Ctr.*, 88 S.W.3d 1, 13 (Mo. App. 2002) (plaintiff "did not have to plead . . . a business relationship . . . ; proof of expectancy, i.e., proof of prospective contractual relations, was enough."). The taxicab drivers say their expectancy was reasonable because the public had consistently sought rides for hire and—but for Uber—had no alternative to MTC drivers.

This court need not decide whether this is a valid business expectancy, because the drivers have not alleged the absence of justification. "Absence of justification

-4-

refs to the absence of a legal right to justify actions taken." ***Western Blue Print***, 367 S.W.3d at 20. "If the defendant has a legitimate interest, economic or otherwise, in the expectancy the plaintiff seeks to protect, then the plaintiff must show that the defendant employed improper means in seeking to further only his or her own interests." ***Bishop & Assocs., LLC v. Ameren Corp.***, 520 S.W.3d 463, 472 (Mo. banc 2017). "Improper means are those that are independently wrongful, such as threats, violence, trespass, defamation, misrepresentation of fact, restraint of trade, or any other wrongful act recognized by statute or the common law." ***Id.***

Uber has a legitimate economic interest in the drivers' expectation of continuing to provide rides for hire to the public, because Uber and the drivers are direct competitors in the ride-for-hire market. *See* ***Central Trust and Inv. Co. v. Signalpoint Asset Mgmt., LLC***, 422 S.W.3d 312, 324 (Mo. banc 2014) ("[The plaintiff] concedes . . . that [the defendant] has a legitimate economic interest in [the plaintiff's] expectation of continuing to do business with its former clients because the two companies are direct competitors."). The issue is whether Uber used improper means. ***Id.*** *See* ***Briner Elec. Co. v. Sachs Elec. Co.***, 680 S.W.2d 737, 743 (Mo. App. 1984) (competition is a legitimate economic interest and valid justification for interference with a business expectancy as long as the defendant did not employ improper means).

The drivers argue that Uber used improper means by disregarding MTC licensing requirements in violation of the MTC Code and the statutes creating and enabling the MTC, sections 67.1800-67.1822. They emphasize that improper means include "any wrongful act recognized by statute." ***Bishop***, 520 S.W.3d at 472.

But Missouri does not allow private causes of action for damages based solely on the violations of a statute unless the legislature intended the violations to be privately actionable. *See* ***Dierkes v. Blue Cross and Blue Shield***, 991 S.W.2d 662, 667-68 (Mo. banc 1999) (distinguishing claims based on a breach of defendant's

-5-

promise to comply with all applicable law, from claims "created solely by the statute"); ***Egan v. St. Anthony's Med. Ctr.***, 244 S.W.3d 169, 173 (Mo. banc 2008) (affirming the general rule for actions for damages).  This general rule applies even if a theory of relief applies to "unlawful" acts or "violation[s] of a statute."  *See* ***Greene v. Scheider***, 372 S.W.3d 887, 890-91 (Mo. App. 2012) (no cause of action for civil conspiracy—"agreement . . . to do an unlawful act"—based on violation of a statute that creates no private cause of action); ***Imperial Premium Fin. v. Northland Ins.***, 861 S.W.2d 596, 599 (Mo. App. 1993) (no cause of action for negligence per se—"the violation of a statute . . . shown to be the proximate cause of []injury"—based on violation of a statute that creates no private cause of action); ***Bradley v. Ray***, 904 S.W.2d 302, 314 (Mo. App. 1995) ("Because this Court finds no private cause of action can be implied under the []Act, . . . the alleged breach of the Act also does not amount to negligence *per se*."); ***Noss v. Abrams***, 787 S.W.2d 834, 837-38 (Mo. App. 1990) (no cause of action for fraudulent concealment based on violating a regulation requiring disclosure of information, where the legislature did not authorize private causes of action and the regulation did not "purport to make the violation fraudulent concealment"); ***Neighbors Against Large Swine Operations v. Continental Grain Co.***, 901 S.W.2d 127, 132 (Mo. App. 1995) (although the Declaratory Judgment Act says, "[a]ny person whose rights are affected by a statute may obtain a declaration of rights," "the []Act cannot serve as a basis for relief when the party seeking to invoke [it] does not have a direct cause of action concerning the matter," because it would amount to an "end run around the lack of any private right of action").

Here, the drivers' tortious interference claim is based solely on the violation of the MTC Code and the statutes.  They do not argue that Uber's conduct was improper for any other reason, and they seek no damages for the period after Missouri changed its law.  Thus, violation of MTC requirements can be a wrongful act recognized by statute for purposes of tortious interference only if the legislature intended to create a private cause of action for the violation.

-6-

The statutes creating the MTC do not expressly create a private cause of action for violation of MTC requirements. Instead, they empower the MTC to enact its requirements in the MTC Code and to "provide for the enforcement of such code" by "denying, suspending, or revoking of licenses, or [imposing] administrative penalties not to exceed two hundred dollars." **§§ 67.1808(8)**; **67.1818**. The MTC has not purported to create any private causes of action and has established a system of administrative penalties. *See* **Vehicle For Hire Code § 1001** (rev. 5/31/2017).

"When the legislature has established other means of enforcing its statutes, [this court] will not recognize a private civil action for a violation unless such appears by clear implication to have been the legislative intent." *Dierkes*, 991 S.W.2d at 667, *citing* **Shqeir v. Equifax, Inc.**, 636 S.W.2d 947, 949 (Mo. banc 1982) *and* **R.L. Nichols Ins., Inc. v. Home Ins. Co.**, 865 S.W.2d 665, 666 (Mo. banc 1993). There is no clear implication here of legislative intent to create private causes of action. To the contrary, section 67.1816(1) says, "All . . . enforcement of the taxicab code shall rest *exclusively* with the [MTC]." (Emphasis added.)

True, "[w]hen a legislative provision protects a class of persons . . . but does not provide a civil remedy . . . , *the court may, if it determines that the remedy is appropriate to further the purpose and ensure the effectiveness of the enactment,* accord to an injured member of the class a right of action." **American Eagle Waste Indus., LLC v. St. Louis County**, 379 S.W.3d 813, 830 (Mo. banc 2012) (emphasis in original). But assuming there is a protected class here, this court may not imply a private cause of action because the statutes provide a civil remedy—MTC enforcement. "Moreover, while the 'protected class' theory . . . may be a viable factor in determining a 'clear implication' of legislative intent, it does not, standing alone, negate the implication of exclusivity created by the presence of an expressly stated means of enforcement." **Johnson v. Kraft Gen. Foods, Inc.**, 885 S.W.2d 334, 336-37 (Mo. banc 1994). *See* **Lafferty v. Rhudy**, 878 S.W.2d 833, 835 (Mo. App. 1994) ("[T]he general rule is that a statute which does not purport to establish a civil

liability, but merely makes provision to secure the safety or welfare of the public as an entity, is not subject to a construction establishing a civil liability."). Here, there is no indication of legislative intent to create any private causes of action. *See Neighbors Against*, 901 S.W.2d at 130 ("*Johnson* made it clear that Missouri will permit the implication of a private right of action in only the narrowest of circumstances.").

In creating and enabling the MTC, the legislature chose to pursue its goals "[t]hrough [a] system of regulatory compliance and enforcement, not private lawsuits . . . ." *See Dierkes*, 991 S.W.2d at 667. Thus, violation of MTC requirements is not a wrongful act recognized by statute for purposes of tortious interference. *Cf. Philadelphia Taxi Ass'n v. Uber Techs., Inc.*, 218 F.Supp.3d 389, 396 (E.D. Pa. 2016) (Uber's violations of state and local regulations were not "wrongful means," because the violation was not "actionable on a basis independent of the interference claim," as required by Pennsylvania law), *aff'd on other grounds*, 886 F.3d 332 (3d Cir. 2018).

The drivers believe that the *Carter* case is on point. There, the court found the defendant's statutory violation was a "wrongful act recognized by statute" even though the plaintiff was not "within the class of persons sought to be protected by [the statute]." *Carter*, 88 S.W.3d at 15. However, the court in *Carter* recognized that the statute *did* allow a private cause of action for a class of protected individuals. *Id.* at 14 n.6. Tortious interference allows a plaintiff to sue for wrongs committed against a third party. *See Bishop*, 520 S.W.3d at 472 (improper means include "threats, violence, . . . misrepresentation of fact"); *Birdsong v. Bydalek*, 953 S.W.2d 103, 111-12 (Mo. App. 1997) ("when A imprisons or commits such a battery upon B that he cannot perform his contract with C," B "will have a tort claim against the interferer for . . . imprisonment, battery, or property destruction," while C will have a claim for tortious interference). Because the violation in *Carter* was independently actionable by the protected class, the plaintiff could sue for tortious interference. Contrary to

-8-

*Carter*, the violation here of a statute that creates *no* private cause of action is not actionable through tortious interference.[4]

The drivers also emphasize that, to avoid liability for tortious interference, a defendant must have an "unqualified right" to perform the act. *See, e.g.*, **Bishop**, 520 S.W.3d at 472. To be sure, all statutes, common law principles, contractual terms, and other legal requirements are, in some sense, "qualifications" on the right to act. But not all qualifications satisfy the absence of justification. *See* **Stehno**, 186 S.W.3d at 252 n.5 (recognizing that defendant's right to remove the plaintiff from a project was subject to some contractual "qualifications," but refusing to allow the plaintiff to invoke those qualifications to show absence of justification because plaintiff was not a party to the contract); **Baldwin Props., Inc. v. Sharp**, 949 S.W.2d 952, 957 (Mo. App. 1997) ("Negligent acts are not 'improper means' for purposes of [tortious interference].") In the context of tortious interference, a defendant has an unqualified right to interfere with a business expectancy if it has a legitimate

---

[4]One Missouri Court of Appeals case implies that improper means may include illegal acts that are not independently actionable. *See* **Briner**, 680 S.W.2d at 743 ("[W]rongful means would generally entail either an illegal act or an act that is actionable in and of itself."). *See also* **Sales Resource, Inc. v. Alliance Foods, Inc.**, Nos. 4:08CV0732 TCM, 4:09CV0666 TCM, 2010 WL 5184943, at *17 (E.D. Mo. Dec. 15, 2010) ("so long as [the defendant's] conduct was not illegal or independently actionable," it "did not constitute 'improper means'"). *But see* **Global Control Sys., Inc. v. Luebbert**, No. 4:14-CV-657-DGK, 2016 WL 502066, at *4 (W.D. Mo. Feb. 8, 2016) (conduct was not improper means where it "would not be actionable in and of itself"). However, based on *Dierkes*—where the Missouri Supreme Court denied private causes of action based solely on statutory violations not independently actionable—and other Missouri Court of Appeals cases applying this principle to civil conspiracy, negligence per se, and other causes of action, this court determines that the Missouri Supreme Court would not follow *Briner* on this point. *See* **National Union Fire Ins. Co. of Pittsburgh v. Raczkowski**, 764 F.3d 800, 803 (8th Cir. 2014) (this court must "determine how the Missouri Supreme Court would construe the law").

economic interest in the expectancy and does not use improper means. *See **Central Trust***, 422 S.W.3d at 324.

Because the drivers have not alleged absence of justification, the district court properly dismissed the Amended Complaint.

*******

The judgment is affirmed.

_____